IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LINDA K. SHAVER, as Personal Representative of the Estate of Larry Shaver, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. Act. No.: 2:20-cv-739-ECM (WO) |
| AVCO CORPORATION, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court are a motion for summary judgment filed by AVCO Corporation on May 25, 2022, (doc. 57), motions to strike (25 & 34), and motions to exclude expert testimony (docs. 53, 55, 61, 63, & 64).

The Plaintiff, Linda K. Shaver, acting as the Personal Representative of the Estate of Larry Shaver, originally filed a complaint in the Circuit Court for Pike County, Alabama. The case was removed on the basis of federal diversity jurisdiction. No motion to remand was filed. Linda Shaver brings claims for violation of the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), negligence, and wantonness.

Upon consideration of the briefs, the record, and applicable law, and for the reasons that follow, the motion for summary judgment is due to be GRANTED and the motions to exclude and strike are due to be GRANTED in part, DENIED in part, and DENIED in part as moot.

# I.  JURISDICTION

The Court exercises subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, the parties having complete diversity of citizenship and the requisite amount being in controversy.  Personal jurisdiction and venue are uncontested.

# II.   LEGAL STANDARDS

## A. Motions to Exclude

The admissibility of expert opinions in diversity actions is governed by *Federal Rules of Evidence* 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Daubert*'s progeny. The admissibility requirements laid out in those authorities apply to expert opinions proffered in advance of summary judgment. *See Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1242, 1243 n.1 (11th Cir. 2018).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702. In *Daubert*, the Supreme Court held that district courts serve a gatekeeping role to "ensure that any and all scientific testimony or evidence admitted is not only relevant but reliable." 509 U.S. at 590.  District courts serve the same role when considering the admissibility of opinions based on technical or other specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).

The Eleventh Circuit has distilled *Daubert*, *Kumho Tire*, and Rule 702 into a three-part test for any proffered expert opinion: (1) the expert must be qualified to testify competently regarding the matter he or she intends to address, (2) the expert's methodology must be reliable as determined by a *Daubert* inquiry, and (3) the expert's testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue. *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1328 (11th Cir. 2014). "The proponent of expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong." *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010).

### B. Motions to Strike

Under Rule 37, failure to comply with Rule 26(a) empowers a court to preclude use of an expert and that expert's information at trial, "unless the failure was substantially justified or is harmless." FED.R.CIV.P. 37(c)(1).

Under Rule 26(a)(2), which governs the disclosure of expert testimony, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule Evidence 702, 703, or 705." FED.R.CIV.P. 26(a)(2)(A). Rule 26(2) divides experts into two categories with different reporting requirements. Under Rule 26(a)(2)(B), the expert must provide a written report if the expert was "retained or employed specially to provide testimony or one whose duties as the party's employee regularly involve giving expert testimony;" and, under Rule 26(a)(2)(C), any expert who does not need to provide a written report under Rule 26(a)(2)(B), must provide a disclosure that meets certain requirements.

### C.  Motion for Summary Judgment

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED.R.CIV.P. 56(a)).  "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.*  The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

### III.   FACTS

On November 21, 2018, the decedent, Larry Shaver, was operating an AVCO/New Idea Model 323 corn picker on his farm (hereinafter "corn picker").  He had purchased the

corn picker at a local farm equipment auction more than a year earlier. The corn picker he purchased was manufactured in 1965. After he purchased it, Larry Shaver had mechanical work done on the corn picker.

The corn picker at issue consists of snapping rolls that take ears of corn off of the stalks. Gathering chains at the inlet of the snapping rolls guide the stalks to the rolls. Ears of corn are too large to pass between the snapping rolls so they snap off the stalk and fall onto a conveyor belt that transports them to a husking bed. There is a power take off ("PTO") of a tractor that pulls the machine through the field. The corn picker only operates if the tractor's PTO is running.

The instruction manual that accompanied the corn picker instructed users to disengage the PTO and to keep hands and clothing away from moving parts. The corn picker also included a stenciled warning to keep hands away from moving parts. When manufactured, the corn picker also had a "BE CAREFUL" label. The BE CAREFUL label said to stop the machine to adjust and oil; "when mechanism becomes clogged disengage power before cleaning;" and to keep hands, feet, and clothing away from power-driven parts. (Doc. 58-13 at 11). This label was painted over on the corn picker used by Larry Shaver. (Doc. 58-16). The user manual, in the Safety Precautions and Field Operation section, says "Disengage that PTO" with a graphic and provides that if "the machine should plug, which it will sometimes do in extreme down corn or for other reasons, disengage P.T.O. before removing congestion." (Doc. 58-12 at 5). It also directs the user to "NEVER UNDER ANY CIRCUMSTANCES GET OFF THE TRACTOR SEAT WITH THE

POWER TAKE-OFF AND MACHINERY IN MOTION TO CLEAN OUT THE MACHINE BY HAND." (*Id.*).

On November 21, 2018, Larry Shaver's arm became caught in the snapping rolls of the machine and he suffered injuries that caused his death by exsanguination. Teresa Smith and Curtis Shaver were first responders on the scene and Linda Shaver seeks to offer their opinion that Larry Shaver's death was not immediate.

Linda Shaver has retained an expert who offers the opinion that the corn picker should have had safety devices, including an emergency-stop device, accessible to a person trapped in the snapping rolls, to enable the user to interrupt power to the machine. AVCO's retained expert opines that the emergency stop device proposed by Linda Shaver's expert did not exist in 1965 when the corn picker was manufactured.

## IV.   DISCUSSION

### A.  Motions to Strike and Exclude

#### 1.  *Wallace McDougall, Lyman Gunyou, Teresa Smith, and Curtis Shaver*

AVCO has moved to strike portions of the designation of expert witnesses by the Plaintiff, Linda Shaver, for failure to comply with Rule 26(a)(2). Specifically, AVCO has moved to strike non-retained experts Wallace McDougall ("McDougall"), Lyman Gunyou ("Gunyou"), Teresa Smith, and Curtis Shaver. In response, Shaver provided expert reports

for Teresa Smith and Curtis Shaver, which AVCO then moved to strike as untimely. AVCO also has moved to exclude testimony by Teresa Smith and Curtis Shaver.[1]

McDougall and Gunyou were former AVCO employees who testified in prior cases, some of which involved different corn picker models or different injury methods. AVCO moves to strike the disclosure of them as experts because they are deceased and, AVCO argues, the *Federal Rules of Civil Procedure* do not permit a party to designate witnesses as experts when the party has not obtained their consent. AVCO also objects that Linda Shaver has not identified the subject matter on which the witnesses are expected to present evidence. AVCO states that Linda Shaver cannot simply choose portions of testimony from previous cases and rely on that as expert testimony.

In response, Linda Shaver relies on the *Federal Rules of Evidence* regarding use of depositions when a witness is deceased, and also argues that AVCO is aware of the bases of the opinions of these two witnesses because they testified for AVCO in previous cases.

*Small v. Amgen, Inc*., 2017 WL 5443912, at *2 (M.D. Fla. 2017), cited by AVCO, offers persuasive analysis of a similar issue. In that case, a plaintiff summarized in a cursory manner anticipated testimony by treating physicians whom the plaintiff had not spoken to about their willingness to provide expert opinions. *Id.* The court struck the expert designation and excluded the expert testimony, but did not preclude the use of fact witness testimony. *Id.* at *4. The court reasoned that referring to medical records without

---

[1] For reasons to be discussed herein, summary judgment is due to be GRANTED on the bases of legal issues which do not implicate the testimony of some witnesses whose testimony is the subject of pending motions to exclude. Those motions, therefore, are due to be DENIED as moot.

identifying facts within them was not sufficient to tell the defendants about the opinions the physicians would offer or the facts on which they base those opinions. *Id.*; *see also Kondragunta v. Ace Doran Hauling & Rigging Co.*, 2013 WL 1189493, at *6 (N.D. Ga. 2013)(finding that "[a]llowing medical records to be submitted in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a summary.")(quotation and citation omitted).  In addition, the court in *Small* struck the experts as inappropriate because the plaintiff's counsel did not confirm their willingness to serve as experts. 2017 WL 5443912, at *4.

In this case, Linda Shaver has offered a three-page narrative description of opinions offered by McDougall in previous cases and an additional description of opinions offered by Gunyou.  Linda Shaver also has listed up to twelve cases and states that their expected opinions and the basis thereof are set forth in prior depositions and trial testimony in those cases. (Doc. 25-1 at 3&7).  As in *Small*, this disclosure which only includes counsel's summary of opinions in other cases, but refers generally to other case testimony and does not identify the facts on which opinions would be based, is insufficient under Rule 26(a)(2). Furthermore, as in *Small*, the purported experts cannot properly be designated as experts as they did not agree to provide opinions in this case. 2017 WL 5443912, at *4.

Rule 37 provides that evidence not properly disclosed is excluded absent substantial justification or harmlessness.  Because the use of testimony given by McDougall and Gunyou out of the context in which it was offered without an ability to question the witnesses would not be harmless, the Court will not consider opinions offered by those

witnesses. The Court will, however, consider fact testimony from those witnesses where applicable. *See Small*, 2017 WL 5443912, at *4.

   *2. Sevart*

Sevart is an expert retained by Linda Shaver.  AVCO does not seek to exclude the entirety of Sevart's opinions, but specifically moves to exclude opinions that the corn picker should have incorporated an emergency stop, the emergency stop design would have limited or prevented Shaver's injuries, and that the corn picker should have had stripper plates.[2]  AVCO argues that Sevart has no testing data to support his opinion that an emergency stop would have worked on the corn picker in field conditions and that Sevart's opinion is no more than a hypothesis that has not been tested.

Sevart states in his report that the emergency stop was common in industrial operations.  Sevart also states that he has videos of machines as they are being field tested with emergency stops.  Shaver argues that just because the corn picker was not tested under all conceivable conditions does not mean that the opinion is inadmissible, but rather the criticisms of his testing go to weight.

Another judge of this district has examined Sevart's opinion regarding alternative design of a different piece of machinery and concluded that it was admissible. *See Edwards v. Deere & Company, Inc*., 2019 WL 6339901, at *6 (M.D. Ala. 2019).  In that case, the defendant argued that a party cannot be held liable for failing to invent a safer product, a

---

[2] As will be discussed herein, the Court's analysis of the issues presented does not require consideration of other opinions offered by Sevart and objected to by AVCO, therefore, the motion to exclude is due to be DENIED as moot as to those aspects.

proposition with which the court agreed, but found that the experts had offered opinions as to safer designs at the time the tractor produced. *Id.* The court explained that although an expert cannot make bald assertions, testing is not a prerequisite for admissibility. *Id.* at *7. Similarly, in this case, the Court concludes that the objections to Sevart's testimony go to weight, not admissibility.

With regard to Sevart's opinion that the corn picker should have been equipped with stripper plates to minimize the exposure of the snapping rolls, AVCO objects largely based on relevance; that is, AVCO argues that the stripper plate opinion should be excluded because adding stripper plates would have made no difference in this case as Shaver was facing the corn picker when his hand entered it.

Shaver responds with an affidavit from Sevart in which he states that regardless of where the first contact occurred, stripper plates would prevent access to the nip-point of the snapping rolls. AVCO characterizes this affidavit as a sham affidavit, but Sevart also testified in his deposition that stripper plates would have guarded against entanglement at the "nip point" which is further up the machine. (Doc. 54-2 at 240: 1-5). Sevart's affidavit, therefore, is not "an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc*., 736 F.2d 656, 657 (11th Cir. 1984). The motion to exclude Sevart's testimony is, therefore, due to be DENIED as to these opinions.

**B. Motion for Summary Judgment**

*1.    AEMLD Claim*

To establish liability under the AEMLD, a plaintiff must show the following:  injury by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if the seller is engaged in the business of selling such a product, and it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. *Clarke Indus., Inc. v. Home Indem. Co*., 591 So. 2d 458, 461 (Ala. 1991).

AVCO has moved for summary judgment challenging two elements of the claim— that the corn picker was in "defective" condition and that it reached the user without substantial change in the condition in which it was sold.

Caselaw in Alabama has interpreted "defective" to mean that the product does not meet the reasonable expectations of an ordinary consumer as to its safety. *Elliott v. Brunswick Corp*., 903 F.2d 1505, 1507 (11th Cir. 1990).  To prove that it is defective, a plaintiff must prove that (1) the product did not meet reasonable safety expectations and (2) that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the product. *See id.*

AVCO argues that Linda Shaver cannot show that the corn picker did not meet the safety expectations of an ordinary consumer in 1965 because the risk of injury would be apparent to an ordinary consumer.  AVCO points to the report of Linda Shaver's expert, Sevart, in which he states that the "basic hazard of exposed snapping rolls cannot be completely eliminated and maintain a useful corn picker." (Doc. 58-4 at 5).   Sevart

characterized corn picking machines like the Model 323 as "notoriously dangerous." (*Id.* at 4).

In *Elliott*, the plaintiff claimed that a manufacturer's design for a boat propeller was defective because it did not provide a guard to encircle it.  903 F.2d 1505, 1507.  The Eleventh Circuit held that the boat motor manufacturer was not liable under the AEMLD because the plaintiff failed to show that product did not meet the reasonable expectations of an ordinary consumer as to safety or that a safer, practical, alternative design was available. *Id.*  As to the element of consumer expectation, the Eleventh Circuit explained that although under Alabama law a jury ordinarily evaluates a plaintiff's claim that a product is defective, certain products have an inherent danger which the ordinary consumer understands, and, therefore, are not defective. *Id.*  The Eleventh Circuit interpreted Alabama law as adopting the following consumer expectations test:  a defective product is a product which is dangerous beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. *Id.*  The Eleventh Circuit held that the dangers inherent in the boat propeller should have been apparent and, therefore, there was no defective product. *Id.*

Linda Shaver argues that the corn picker at issue in this case is not like the boat propeller in *Elliott* because while the snapping rolls of the corn picker pose a hazard, the average consumer did not realize that they would not be able to pull their hand back faster than the machine could pull them in if they attempted to unclog the rollers.  She contends that a question of fact is created by evidence that hundreds of people were injured by corn

pickers, supporting that a reasonable person did not appreciate how dangerous the corn picker was.

Linda Shaver cites to *Ex parte Essary*, 992 So. 2d 5, 12 (Ala. 2007), for the proposition that there is a rebuttable presumption that every person will give heed to instincts of safety and self-preservation to exercise ordinary care for his own protection. In other words, Linda Shaver seeks to draw an inference from her evidence of incidents with corn pickers to demonstrate a lack of obviousness of the hazard posed by the corn picker.

Much of the evidence Linda Shaver relies on in making her argument is in the form of opinions by McDougall and Gunyou, which, for the reasons discussed above, the Court will not consider.  However, Shaver also presents evidence in the form of a fact testified to by McDougall, which the Court will consider; namely, when asked in a deposition taken in a different case whether he was aware of there being hundreds of people being caught in rolls of corns pickers from the late 1950s to 1961, McDougall testified that the number was "in the hundreds." (Doc. 85-4 at 5: 9-13).  Linda Shaver also offers a composite exhibit of corn picker incident reports and complaints, without citing to any relevant information within that composite exhibit.  Most of the complaints within the exhibit concern events dated after 1965, with no indication as to when the equipment was manufactured.  (Doc. 85-3).  The composite exhibit does reveal, however, that there were at least some complaints of injuries stemming from entrapment in "husking rolls," not the snapping rolls which are at issue here.  (*Id.* at 42).

Because there is no discussion of accidents from boat propellers in the opinion in *Elliott*, it does not appear to this Court that even if there were evidence of relevant accidents that evidence would distinguish this case from *Elliott*. Further, the bare fact that there were "hundreds" of people being caught in the rolls of corn pickers between the late 1950s and 1961, without any details as to whether the rolls were snapping or husking rolls, what the injuries were, or even how many corn pickers were in service at that time, is not a sufficient basis for the inference Linda Shaver seeks. Instead, the unrebutted evidence is that the inherent hazard of exposed snapping rolls cannot be completely eliminated and maintain a useful corn picker and that corn pickers are "notoriously dangerous." Both the corn picker in this case and the boat propeller at issue in *Elliott* pose an obvious hazard which cannot be eliminated. This Court concludes, therefore, that this case falls within the holding of *Elliott*.

Linda Shaver makes an additional argument, relying on *Garrison v. Sturm, Ruger & Co., Inc*., 322 F. Supp. 3d 1217 (N.D. Ala. 2018), that a reasonable consumer would have expected the corn picker to be equipped with safety devices. In *Garrison*, the court applied *Elliott* to a claim arising from an injury by a firearm originally purchased in 1969. The court reasoned that the inherently dangerous product had to have been defective according to the prevailing consumer standards in 1969. *Id.* The court considered evidence that the type of safety device argued for by the plaintiff was used in other firearm models and concluded that the plaintiff had sufficiently created an inference of a reasonable consumer expectation "in the absence of expert testimony establishing consumer safety expectations in 1969." *Id.* at 1228. Ultimately, however, the court concluded that the

14

design was not available in the firearm model at issue and granted summary judgment. *Id.* at 1232.

Linda Shaver argues in this case that an ordinary consumer in 1965 would have expected safety devices to be installed on the corn picker.[3]  Linda Shaver's evidence to support her argument comes largely from Sevart's affidavit.  (Doc. 85-5).  Sevart provides evidence that an emergency stop device had existed since before the 1900s, and emergency stop devices were incorporated into some agricultural machinery, such as corn huskers. Linda Shaver also points to evidence that in the 1960s, another manufacturer, Gehl, used a disconnect box on a forage box and that another company had applied for a patent for a device that would allow a farmer to shut down a tractor from a remote location.  Linda Shaver cites to a portion of Sevart's affidavit in which he states that there was a recommendation in 1975 by the American Society of Agricultural Engineers that corn pickers not equipped with stripper plates be equipped with a roll separating device. (*Id.* at 8).  Linda Shaver also presents evidence that the medical profession coined the term "corn picker hand" (*id.* at 9), and an article published before 1965 referred to that term.  Linda Shaver further relies on fact testimony by McDougall that New Idea had stripper plates on Uni-systems, not the corn picker at issue, in 1965.  Finally, she points to evidence that the

---

[3] Linda Shaver also argues that under a "crashworthiness" analysis, she must only rely on "risk-utility" balancing, citing *Flemister v. GMC*, 723 So. 2d 25, 27 (Ala. 1998).  However, in that case the Court explained, "[w]e acknowledge the plaintiff's excellent discussion of the authorities criticizing the use of consumer expectation as an element of design defectiveness in products-liability cases, as well as a trend in other jurisdictions to adopt a pure risk/utility analysis as the standard by which to judge an alleged design defect. However, whether our law for crashworthiness cases will be better served by maintaining the present 'mixed' analysis or by adopting a risk/utility analysis is not an appropriate consideration under the facts of this case." *Id.* at 28.

corn picker had a throw-out clutch which was used to remotely stop the wagon elevator. Linda Shaver's argument is that there is enough evidence in this case to justify a reasonable inference that in lacking an emergency stop or stripper plates, the corn picker failed to meet the ordinary expectations of a consumer in 1965.

In response, AVCO contends that Linda Shaver cannot show that the ordinary consumer in 1965 would have expected corn pickers to be equipped with the safety devices Sevart has proposed today. AVCO's expert, William Field ("Field"), has presented evidence that an emergency stop device and stripper plates were not "applicable or in general use on corn pickers when the New Idea Model 323 was designed, manufactured, or sold . . . ." (Doc. 58-10 at 7-8). Field offers the opinion that additional design features including stripper plates or emergency stop devices "would not have been expected by a buyer of the New Idea 323 corn picker or any other corn picker manufactured at that time." (Doc. 58-10 at 7-8).

This evidence from Field is significant because in this case, unlike in *Garrison*, the Court has affirmative expert opinion testimony that additional design features including stripper plates or emergency stop devices would not have been expected by a reasonable consumer in 1965. (Doc. 58-10 at 7-8). The evidence Linda Shaver has presented is of safety devices that existed within the agricultural industry, but there is no evidence of safety devices in the form of emergency stops on corn pickers existing in 1965. The evidence regarding stripper plates concerned a different type of corn picker. This Court cannot conclude, therefore, that Linda Shaver's evidence of safety devices in agricultural equipment other than the corn picker, or, in the case of the throw-out clutch on the elevator

16

for the wagon, a different safety device, is sufficient to create a question of fact which precludes summary judgment as to consumer expectations. Summary judgment is, therefore, due to be GRANTED on the AEMLD claim for failure to create a question of fact as to whether in 1965 the corn picker met the reasonable expectations of an ordinary consumer.

### 2. *Negligence and Wantonness Claims*

Under Alabama law, negligence and wantonness claims are not subsumed by the AEMLD. *Spain v. Brown & Williamson Tobacco Corp*., 872 So. 2d 101, 106 (Ala. 2003). Although they are conceptually distinct causes of action, a plaintiff can only succeed on a products-liability claim on a negligence theory if the product at issue is sufficiently unsafe so as to render it defective. *McMahon v. Yamaha Motor Corp., U.S.A*., 95 So. 3d 769, 772 (Ala. 2012). "In a negligence case, the plaintiff must establish not only that the product at issue is defective, but also that the manufacturer failed to exercise due care in the product's manufacture, design, or sale." *Id.* For reasons discussed, Linda Shaver has not presented sufficient evidence of defect. Summary judgment is, therefore, due to be GRANTED as to the negligence claim.

> "Wantonness" has been defined . . . as the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result. The knowledge of the defendant is the *sine qua non* of wantonness.

*Mazda Motor Corp. v. Hurst*, 261 So. 3d 167, 189 (Ala. 2017) (emphasis original); *see also McMahon*, 95 So. 3d at 773 (after jury verdict in favor of the defendant on AEMLD claim concluding that there was substantial evidence introduced at trial from which the jury could

have found a specific knowledge of the risk of arm and leg injuries and wanton failure to address that risk in a timely manner).

AVCO argues that summary judgment is due on the wantonness claim because Linda Shaver cannot prove that the corn picker was defective and, alternatively, AVCO's warning precludes the wantonness claim.

For reasons discussed above, the Court has concluded that Linda Shaver has failed to create a question of fact as to the defective nature of the corn picker. Additionally, Linda Shaver's evidence of AVCO's knowledge of dangers posed by the corn picker comes from the opinion testimony of McDougall which, for the reasons discussed, the Court has not considered because that testimony is due to be excluded. Therefore, summary judgment is due to be GRANTED as to wantonness.

### 3. Warning claims

To maintain an action for failure to warn based upon a negligence theory or under the AEMLD, a plaintiff must show that the defendant breached a duty and that the breach proximately caused plaintiff's injury. *E.R. Squibb & Sons, Inc. v. Cox*, 477 So. 2d 963, 970 (Ala.1985). "Where a warning is necessary, the warning need only be one that is reasonable under the circumstances and it need not be the best possible warning." *Gurley By & Through Gurley v. Am. Honda Motor Co*., 505 So. 2d 358, 361 (Ala. 1987). To establish a claim for wanton failure to warn, a plaintiff must also show that the defendant "consciously and intentionally failed to give reasonable and adequate warnings with knowledge of, or reckless indifference to, the fact that the lack of warnings made [the plaintiff's] injury likely or probable." *Richards v. Michelin Tire Corp*., 21 F.3d 1048, 1058

(11th Cir. 1994).  "A negligent- or wanton-failure-to-warn claim cannot be submitted to a jury unless there is substantial evidence that the allegedly inadequate warning would have been read and heeded and that it would have prevented the accident."  *Sears, Roebuck & Co. v. Harris*, 630 So. 2d 1018, 1030 (Ala. 1993).

AVCO has moved for summary judgment on the grounds that its warnings were adequate as a matter of law and that Linda Shaver cannot prove proximate cause.  AVCO has not moved for summary judgment on the element of duty.

Linda Shaver argues, relying on testimony of Sevart, that the instructions AVCO used were not adequate warnings in part because they did not identify the danger.  Linda Shaver further contends that the warnings were inadequate because Larry Shaver still could have been injured if he acted consistently with the recommendations provided if he made inadvertent contact with the picker while inspecting the picker from a distance.  Linda Shaver's argument on this point, however, is purportedly supported by testimony from Gunyou, which she characterizes as offering an opinion as to what AVCO expected of its consumers.  For reasons discussed above, the Court will not consider the inadmissible opinion testimony of Gunyou.  Linda Shaver further points to evidence of warnings given in the 1980s.  Evidence of warnings given later, however, does not address the adequacy of the warning in 1965. *See Alabama Power Co. v. Marine Builders, Inc*., 475 So. 2d 168, 173 (Ala. 1985)(holding that exclusion of evidence of a mast warning used in 1976 as evidence for a 1975 model was not an abuse of discretion).

As to proximate cause, Linda Shaver argues that she has expert testimony from AVCO's expert, Dr. David Bizzak, to support the existence of a different warning that was

not provided on the corn picker that would have prevented the accident.  She points to a warning that the user should always disengage the PTO before dismounting from the tractor.  Linda Shaver argues that that warning was not provided by AVCO anywhere in 1965, in either the manual or the on-product labels. (Doc. 85 at 79).

The deposition page provided by Linda Shaver contains the question "[i]s there anything on here that speaks to disengage [sic] the PTO before you get off the tractor?" and Bizzak's answer which is "[n]ot that I see on that page you're showing there . . . ." (Doc. 85-19 at 254:  2-6).

The user manual provided to the Court, however, which is stamped "January 26, 1965,"  (doc. 58-12 at 73), contains the following language:  "[i]f the machine should plug . . . disengage P.T.O. before removing congestion . . . . NEVER UNDER ANY CIRCUMSTANCES GET OFF THE TRACTOR SEAT WITH THE POWER TAKE-OFF AND MACHINERY IN MOTION TO CLEAN OUT THE MACHINE BY HAND." (*Id.* at 5).  Although in two separate sentences, the manual directs the user to disengage the PTO before removing congestion and to not leave the tractor seat with the power take-off and machinery in motion.  In addition to the instructions in the manual, the BE CAREFUL label located on the corn picker, which had been painted over on the corn picker at issue, instructed the user to "disengage power before cleaning."  (Doc. 58-13 at 11).  The Court cannot conclude that Linda Shaver has created a genuine issue of fact as to the existence of the very warning she argues would have prevented the accident.[4]

_____

[4] Although the Court finds that there is no genuine issue of fact as to whether the warning Linda Shaver contends would have prevented this accident existed in 1965, the Court notes that Linda Shaver also argues

The expert testimony supports Linda Shaver's position that the warnings on the corn picker, if read and heeded, would have prevented the accident.  AVCO's expert Bizzak[5] stated in his report that the most basic precaution in the use of powered agricultural equipment is to disengage the PTO of the tractor before dismounting, and that if Larry Shaver had done that, the accident in question would not have happened. (Doc. 58-1 at 10).  Sevart's opinion is consistent with that as well.  When asked in his deposition whether if Larry Shaver had shut off the corn picker so that it was not running, he would not have been caught in it, Sevart answered, "If the corn picker is not running, he won't get ingested in the machine. That's true." (Doc. 58-6 at 185: 18-25).

A manufacturer must only "warn of those dangers which the owner or user would not be aware of under the particular circumstances of his use of the product in question." *Gurley*, 505 So. 2d at 361.  In *Gurley*, a passenger on a motorcycle was injured. *Id.*  A label on the motorcycle said "WARNING—OPERATOR ONLY—NO PASSENGERS," as did the warning in the owner's manual. *Id.*  The Court concluded that these were adequate warnings as a matter of law. *Id.*

---

that she need not present evidence that Larry Shaver read the instructions, citing *Reed v. Tracker Marine, LLC*, 574 F. Supp. 3d 1065, 1093 (N.D. Ala. 2021).  Instead of falling within the reasoning of *Reed*, however, the undisputed facts in this case fall within the proximate cause holding of *E.R. Squibb & Sons, Inc.*, 477 So. 2d at 970 (explaining that the situation of an "allegedly inadequate, unspecific warning" is in contrast to cases in which the plaintiff cannot read at all or the warning provided was "inadequate with respect to prominence.").  Linda Shaver further argues that this case is like *Lakeman v. Otis Elevator Co*., 930 F.2d 1547 (11th Cir. 1991), which held that testimony that the decedent was "careful & safety conscious" was enough evidence for a fact-finder to determine a warning would have been read and heeded. However, in this case, the instructions provided on the corn picker were painted over and illegible and the Court has not been pointed to evidence that Larry Shaver had obtained a copy of the user manual.

[5] Linda Shaver has moved to exclude an opinion of AVCO's expert witness Bizzak, but  Bizzak's opinion about disengaging the PTO is not the subject of that motion.

Considering the admissible testimony before the Court, the Court concludes that the warnings here, as in *Gurley*, were adequate as a matter of law. While AVCO might not have provided the best possible warning, under Alabama law, the warning need only be one that is reasonable under the circumstances. *Id.* Here, the unrefuted evidence is that the warnings provided, if read and heeded, would have prevented the accident. Accordingly, there is no question of fact sufficient to preclude summary judgment and the motion is due to be GRANTED as to the warning claims.

## V.   CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The motions to strike (doc. 25 & 34) are GRANTED in part and DENIED in part as moot.

2. The motion to exclude expert testimony (doc. 53) is DENIED in part and DENIED as moot in part and the motions to exclude expert testimony (doc. 55, 61, 63, & 64) are DENIED as moot.

3. The motion for summary judgment filed by AVCO Corporation (doc. 57) is GRANTED.

A final judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 22nd day of September, 2022.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE